

**IT IS ORDERED as set forth below:**

**Date: July 24, 2026**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: | |
| | CASE NUMBER: |
| **YOLANDA MARIA HARRIS,** | **26-51862-PMB** |
| | |
| Debtor. | CHAPTER 13 |
| **YOLANDA MARIA HARRIS,** | |
| Movant, | |
| **v.** | CONTESTED MATTER |
| **LAKEVIEW LOAN SERVICING, LLC,** | |
| Respondent. | |

**ORDER ON DEBTOR'S (I) MOTION FOR DETERMINATION OF**
**POST-PETITION MORTGAGE FEES AND (II) OBJECTION TO CLAIM**

This matter is before the Court on the (i) _Debtor's Motion for Determination of Postpetition_

_Mortgage Fees, Expenses and Charges Under Fed. R. Bankr. P. 3002.1(e), and Notice of Hearing_

_Thereon_ (Doc. No. 44)(the "Motion"), the (ii) _Debtor's Objection to Proof of Claim No. 7 Filed_

_By Lakeview Loan Servicing, LLC and Notice of Hearing Thereon_ (Docket No. 43)(the "Objection

to Claim"), both filed by Yolanda Maria Harris (the "Debtor"), *pro se*, the (iii) *Response to Debtor's Objection to Proof of Claim No. 7 Filed By Lakeview Loan Servicing, LLC* (Doc. No. 69)(the "Claim Objection Response"), and the (iv) *Response to Debtor's Motion for Determination of Post-Petition Mortgage Fees, Expenses and Charges Under Fed. R. Bankr. P. 3002.1(e)* (Docket No. 70)(the "Fees Response"), filed by Lakeview Loan Servicing, LLC (the "Respondent"). The Debtor also filed her *Debtor's Consolidated Reply to the Responses of Lakeview Loan Servicing, LLC to the Objections to Proof of Claim No. 7 (Doc. 69) and Proof of Claim No. 13 (Doc. 71)* on July 2, 2026 (Docket No. 89)(the "Reply") in response to, among other things, the Claim Objection Response.

In the Motion and the Objection to Claim, the Debtor objects to aspects of Proof of Claim No. 7 filed on March 4, 2026 ("Claim No. 7") and related *Official Form 410S2 - Notice of Postpetition Mortgage Fees, Expenses, and Charges*, filed by the Respondent on March 13, 2026 (Docket, *passim*)(the "Fees Notice"). In the Motion, she objects to the $1,225 of post-petition attorneys' fees claimed by the Respondent in the Fees Notice – $600 for "Plan Review" and $625 for "Proof of Claim," under Federal Rule of Bankruptcy Procedure ("FRBP") 3002.1 – filed on March 13, 2026. The Debtor compares these amounts to amounts charged in this case by separate counsel that represents the Respondent regarding a different loan on different property.

In the Objection to Claim, the Debtor objects to the inclusion of any escrow shortfall in the arrearage required to be cured in this case. In support of that objection, she attached documents from the Respondent that she says show there is no such arrearage. She also objects to the inclusion of any late fees in the prepetition arrearage, as she asserts the Respondent's practice is not to insist of payment of same but instead it adds those amounts to the balance owed such that payment of those amounts during this case is not necessary to cure her prepetition defaults.

In the Fee Response, the Respondent describes in detail the work it asserts was needed to file Claim No. 7 and otherwise get familiar with the case. The Respondent also highlights the need to assure its rights are not modified based on the classification of the property securing its loan as the Debtor's principal residence. The Respondent also asserts that any comparison with the fees charged by separate counsel is not valid given the fact that they rely on separate loan documents that lead to different consequences in bankruptcy since the collateral for that other loan is not Debtor's principal residence. Further, the Respondent points out that the "plan review" fee also includes attorney review throughout this case, which is more involved based on the voluminous pleadings filed by the Debtor. In the Claim Objection Response, the Respondent explains why an escrow shortage is included in the Proof of Claim although the escrow analysis does not show one. It also asserts that the accrued late fees are properly part of the arrearage.

In the Debtor's Reply, after first clarifying that she is relying on FRBP 3002.1(e) for her objection to post-petition fees such as the late charge and that a creditor's own documents of record may be used to rebut the presumed validity of its claim, the Debtor moves into her principal argument. Here, the Debtor asserts that the issue is not disallowance of the prepetition late charges; rather, the question is whether those charges should be classified as an amount necessary to cure the mortgage default through the Debtor's Chapter 13 plan under 11 U.S.C. §§ 1322(b)(5) and (e), or whether instead they may be collected as part of the maintained long-term mortgage debt. On this point, the Debtor urges that the loan documents control the proper treatment of these charges in terms of payment application and reinstatement structure. On her reading of the loan documents, the Debtor contends that payment of the late charges is not a condition of an installment default or of reinstatement. In other words, the late charges, which the Debtor does not dispute are owed, are separate from and not part of a missed monthly installment payment, which triggers a default

and is not an amount necessary to cure such default. She insists such conclusion is supported not only by the loan documents, but confirmed by the Respondent's course of performance and does not prejudice its rights.

With respect to the Respondent's claim for attorneys' fees within Claim No. 7, the Debtor counters that although such fees may be authorized, they must be in amount reasonable and customary, justified by proper documentation, and based on work actually performed by counsel. According to the Debtor, the Respondent has not properly supported its claim for fees under the applicable standard.[1] Further, the Debtor reiterates that the Respondent cannot claim that she owes an arrearage for February of 2026 and that the underlying loan is due for March, when, as the parties acknowledge, the Debtor did make a payment in late February.

All the foregoing pleadings came before the Court for hearing on June 25, 2026, at 10:15 a.m. (the "Hearing").[2] The Debtor appeared *pro se*.[3] Anita Khosla appeared for the Respondent and counsel for the Chapter 13 Trustee also appeared. At the Hearing, and as stated in her Reply, the Debtor withdrew her Objection to Claim to the extent it sought the removal of the escrow shortage from Claim No. 7. The Debtor also added to the mix an issue regarding application of the payment the parties agree she made that was received on February 26, 2026, after the filing of this case (the "First Post-Petition Payment"). At the Hearing, the Debtor asserted that the First

---

[1] As for Proof of Claim No. 13, filed on March 26, 2026, the Debtor states that even though the Respondent withdrew its claim of $900 as a post-petition fee, it has not taken steps to remove that charge from the Debtor's account. At the Hearing, the Debtor noted that this fee had now been withdrawn.

[2] The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

[3] The Debtor filed this case with counsel but subsequently fired her counsel. *See* Docket No. 1, pp. 50-52 (*Disclosure of Compensation of Attorney for Debtor*) as Amended at Docket No. 15; *Notice of Pro Se Appearance, Termination of Prior Counsel, and Request for Counsel Withdrawal* (Docket No. 25); and *Order Granting Debtor's Motion for Withdrawal of Counsel* (Docket No. 37). The Debtor is herself an attorney and has determined to proceed with this case *pro se* since that time.

Post-Petition Payment should be applied to her prepetition arrearage, since she intended for it to be the February 2026 monthly payment.  The Respondent replied that it could not legally apply the First Post-Petition Payment to the prepetition arrearage without authorization from this Court. Further discussion was had regarding how application to the prepetition arrearage would not be in the Debtor's interest, given the need for her to remain current post-petition.  Other than the foregoing, the parties reiterated their positions as set forth in the above-referenced pleadings.

Based upon the record in this case, the arguments made at the Hearing, and the findings of fact and conclusions of law stated herein and on the record at the Hearing, which are adopted herein pursuant to Federal Rule of Civil Procedure 7052 and FRBP 9014, the Motion is granted as set forth below, and the Objection to Claim is overruled, all as follows.

In her post-hearing Reply, the Debtor acknowledges that, as determined in the cases of *In re Ward*, 73 B.R. 119, 121-22 (Bankr. N.D. Ga. 1987) and *In re Carr*, 36 B.R. 381 (Bankr. N.D. Ga. 1984), contractually authorized late charges are recoverable and allowable as part of an arrearage claim.  She believes, however, that these decisions are distinguishable as they did not consider the payment-application and reinstatement structure under the loan documents or the loan servicer's accounting and that in this case, late charges are provided for separately from, and subordinated to, the installment amounts past due.  In addition, payment of accumulated late charges is not stated to be a condition of reinstating the installment payment stream.  Reply, p. 3.[4]

---

[4] During the Hearing, the Debtor cited *In re Carlton*, 437 B.R. 412 (Bankr. N.D. Ala. 2010) in support of her argument regarding application of the First Post-Petition Payment to her arrearage.  In her Reply, however, she withdrew her reliance on this case for the rule that prepetition late charges are excluded from the amount of an arrearage to be cured. Among other things, in that case the court confirmed that Section 1322(b)(5) permits a debtor to pay a prepetition arrearage over the length of a plan including any arrears, such that amortization of post-petition installments continued without accrual of late fees.  Plan language that attempts to further address application of payments only produces "clutter."  At the same time, a debtor may not propose a plan that provides that late fees are excused for any late post-petition installment payments.  437 B.R. at 418-19.  All told, as she recognized, this decision does not lend support to the Debtor's assertion that the First Post-Petition Payment should be applied as she requests.

The Debtor further argues that the Respondent's course of dealing with the Debtor confirms her reading of the loan documents that payment of late charges is not a condition of reinstating the mortgage loan.  Reply, p. 5.  Here, the Debtor points to the Respondent's accounting practices, where monthly payments were applied to the installment amount (not late charges), the loan was treated as current and was not accelerated due to the unpaid late charges, and the late charges were entered on a separate payoff line in its May 6, 2026, payoff statement.  The Debtor also contends that the Respondent's rights will not be impaired through her proposed treatment of these charges since they will remain collectible over either the life of the loan or at payoff.  She adds that her proposal does not run afoul of *In re Bateman*, 331 F.3d 821, 831-34 (11th Cir. 2003), as it does not disallow the charges or reduce the Respondent's aggregate secured claim, and only permits her to pay them over the life of the maintained long-term mortgage debt as opposed to an upfront cost of cure.  Reply, p. 6.

In the Claim Objection Response, the Respondent argues that, as stated in Claim No. 7, once a monthly payment is not made on a timely basis, a default occurs.  A late charge is imposed if the payment is not made by the fifteenth (15th) of the month it is due and, in turn, becomes part of the payment amount that is then due.  Thus, a default is not properly cured until the payment and late charge are fully paid.  In addition, the Debtor mistakenly conflates acceleration, which the lender may elect to do, and a default.  As the Respondent avers, if a default in payment occurs, the lender may choose not to accelerate the note balance as is the case here, where it continued to accept late payments.  Based on the payments it received from the Debtor, the Respondent applied them to the monthly payment amount due, so late charges did not accrue, and the loan remained current.  This application, however, did not operate to cure the default, which still existed, and the Debtor remain obligated to cure it, including the late charges.

A debtor must include pre-petition default interest and late fees to cure a default on a note secured by her principal residence in a Chapter 13 plan. *See In re Iglar*, 2006 WL 8554402, at *1 (Bankr. D. Ariz. Jan. 5, 2006). Under 11 U.S.C. § 1322(b)(2), a Chapter 13 debtor may not modify the rights of a holder of such a claim. To cure a default relating to such a claim through a plan, a debtor must cure in accordance with the terms of the security agreement and applicable state law. *See* 11 U.S.C. § 1322(e).[5] "With the enactment of 11 U.S.C. § 1322(e), courts are no longer left to grapple over the meaning of 'cure' in the bankruptcy statutes." *In re Lamelas*, 2013 WL 324028, at *4 (Bankr. S.D. Fla. Jan. 28, 2013).[6]

Here, the loan documents require the Debtor to pay all amounts due under the promissory note and also provide for payment of late fees. *See* Note, ¶ 6 (Late Charge for Overdue Payments); *see also* Security Deed, ¶ 2 (Application of Payments or Proceeds)(attached to Claim No. 7 as Exhibits, respectively). Such provisions in secured contracts are enforceable under Georgia law.[7]

---

[5] The Bankruptcy Code dictates the standard by which the arrearage amount is to be determined. Section 1322(e) provides as follows:

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1322(e).

[6] In *Lamelas*, *supra*, the court modified the stay because it did not appear that the debtor could afford plan payments based upon calculation of amounts due to bank, inclusive of interest at the default rate, under its loan documents. 2013 WL 324028, at *2.

[7] Georgia law provides as follows:

> (3) No creditor or servicer may charge a borrower a late payment charge unless the loan documents specifically authorize the charge, the charge is not imposed unless the payment is past due for ten days or more, and the charge does not exceed 5 percent of the amount of the late payment. A late payment charge may not be imposed more than once with respect to a particular late payment. If a late payment charge is deducted from a payment made on the home loan and such deduction results in a subsequent default on a subsequent payment, no late payment charge may be imposed for such default. A lender may apply any payment made in the order of maturity to a prior period's payment due even if the result is late payment charges accruing on subsequent payments due….

O.C.G.A. § 7-6A-3(3)(Georgia Fair Lending Act - Limitations and prohibited practices relating to all home loans).

Therefore, the Debtor must include prepetition late fees in her proposed cure through the Plan, *Iglar*, *supra*, 2006 WL 8554402, at *2, and the Objection to Claim is overruled to that extent Further, the Debtor may not apply the First Post-Petition Payment to the February payment, but instead, it must be applied as a post-petition payment, and the Objection to Claim is also overruled to that extent.

Next, the Court turns to the Debtor's challenge of the Respondent's claim for attorneys' fees. Reasonable attorneys' fees are provided for in the Note in paragraph 6(E) and in the Security Deed in paragraph 9. As mentioned above, the Debtor contends these fees have not been properly supported and must be for actual work performed. In its Fees Response, the Respondent counters that its fees are reasonable based on a description of the documents it needed to review and issues it needed to consider to protect its interests as provided under the loan documents.

Under Section 1322(e), in addition to the contract terms, state law applies.[8] For instance, in a decision applying Illinois law, the court stated that whether expressly stated in the contract or not, a standard of reasonableness will be implied to all requests for reimbursement of attorney fees and expenses asserted by one party against the other. *In re Coates*, 292 B.R. 894, 900 (Bankr. C.D. Ill. 2003), citing *Kaiser v. MEPC American Properties, Inc.,* 164 Ill.App.3d 978, 983, 518 N.E.2d 424, 427, 115 Ill. Dec. 899, 902 (Ill.App. 1 Dist.1987). Moreover, the party seeking the fees bears the burden of proof and production to present sufficient evidence from which the court can decide their reasonableness.[5] *Id; J.B. Esker & Sons, Inc. v. Cle–Pa's Partnership,* 325 Ill.App.3d 276, 757 N.E.2d 1271, 259 Ill. Dec. 136 (Ill. App. 5 Dist. 2001). *See also Bruner v. Office of Personnel Mgmt,* 996 F.2d 290 (Fed. Cir. 1993)(party with burden of proof also bears burden of producing sufficient evidence to support finding in its favor).

---

[8] Because the debt herein has not matured, compliance with O.C.G.A. § 13-1-11 was not required to collect attorneys' fees.

In addition, the preparation and filing of a proof of claim has been held not to be a ministerial act and, along with reviewing bankruptcy documents, may be subject to compensation as reasonable attorneys' fees. *See In re Mandeville*, 596 B.R. 750, 761 (Bankr. N.D. Ala. 2019); *see also In re Susanek,* 2014 WL 4960885, at *2 (Bankr. W.D. Pa. Sept. 30, 2014).

It has been stated that "[t]he Official Form [410S2] itself does not invite further elaboration (with the exception of line 10 and the 'Other' categories) and only requires by way of itemization that the fee amount be 'listed' and the 'dates incurred' be provided. But once the notice of fees is challenged, more evidence is required." *In re Trudelle*, 2017 WL 4411004, at *10 (Bankr. S.D. Ga. Sept. 29, 2017); *see also In re Pittman*, 2015 WL 1262837, at *2 (Bankr. D.S.C. March 16, 2015). In *Trudelle*, the court disallowed post-petition fees of $600.00 under 11 U.S.C. § 1322(b)(5) and FRBP 3002.1. As the court further stated "[i]t would not have required much proof to convince the Court that attorneys' fees of $600.00 for the documents (42 pages) comprising its proof of claim were reasonable." *Trudelle, supra*, 2017 WL 4411004, at *10. The court also cited *In re Polly*, 2016 WL 3004439, * 1–2 (Bankr. W.D. Ky. May 17, 2016)(noting creditor may establish it is entitled to attorneys' fees by filing an affidavit detailing the legal work performed in connection with debtor's mortgage).

Although the Fees Response provides more detailed description, the Respondent did not put on any evidence regarding the requested fees and thus has not shown why the fee amounts as requested in the Fees Notice should be greater than that amount sought by separate counsel in this case for comparable work.

In view of the foregoing discussion, it is **ORDERED** as follows:

1.  The Motion is **GRANTED** to the extent that the Respondent's claim for attorneys' fees in the Fees Notice is reduced to the amount of $125 for plan review and $450 for preparation and filing of proof of claim, for a total of $575; and

2.  The Objection to Claim is **OVERRULED**; more specifically, the late fees are a part of the prepetition arrearage that must be cured, and the First Post-Petition Payment may not be applied to the Debtor's February payment but must instead be applied as a post-petition payment.[9]

The Clerk is directed to serve a copy of this Order upon the Debtor, counsel for Respondent, and the Chapter 13 Trustee.

**[END OF ORDER]**

---

[9] As noted *supra*, the Objection to Claim was withdrawn to the extent it applied to the escrow shortage.